UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-365-GWU

KATHY ANN SHIELDS, PLAINTIFF,

VS.           **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

>   impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4.   At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.   If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

08-365  Kathy Ann Shields

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

08-365  Kathy Ann Shields

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

08-365 Kathy Ann Shields

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Kathy Ann Shields, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of sprains and degenerative disc disease. (Tr. 21). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Shields retained the residual functional capacity to perform a significant number of "light" level jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 22-5). The Appeals Council accepted the plaintiff's request for review, but issued a new unfavorable decision adopting the ALJ's decision which more accurately reflected the hypothetical question which had been presented by the ALJ to the VE at the administrative hearing. (Tr. 11-13). It declined to consider new evidence submitted after the date of the ALJ's decision. (Tr. 11). The plaintiff thereupon filed this appeal.

The ALJ's hypothetical question asked the VE to assume that the plaintiff, a 51-year-old widow with a high school education and no past relevant work experience (Tr. 529), could perform any jobs if she were limited to "light" level exertion and also had the following non-exertional restrictions. She: (1) required a sit/stand option every 45 minutes; (2) could not climb ladders, ropes, or scaffolds;

(3) could occasionally stoop, crawl, or climb ramps and stairs; and (4) had a "severely limited but not precluded" ability to deal with stress and a "limited but satisfactory" ability to understand, remember, and carry out simple instructions. (Tr. 538). The VE responded that there were jobs that such a person could perform and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 539).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff points out on appeal that Dr. James Bean, a neurosurgeon, provided a physical residual functional capacity assessment dated November 28, 2006 which was more restrictive in some respects than the ALJ's hypothetical. Dr. Bean indicated that the plaintiff could lift 35 pounds occasionally and 15 pounds frequently, stand and walk a total of four hours in an eight-hour day (no more than one-two hours without interruption), sit two hours in an eight-hour day (no more than one hour without interruption), could never crawl, and could occasionally climb, balance, stoop, crouch, and kneel. (Tr. 460-2). The reason given for the restrictions was a "herniated lumbar disc." (Tr. 60). The plaintiff argues that Dr. Bean was a treating specialist, and that while the ALJ appeared to accept Dr. Bean's opinion, the hypothetical question did not reflect all of the limitations

provided by this source.  The plaintiff correctly points out that the opinion of a treating physician is normally provided controlling weight if there is substantial evidence to support it, and that the agency's rules promise claimants that it will always give good reasons for the weight it gives a treating physician's opinion. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004), citing 20 C.F.R. § 404.1527(d)(2).  The ALJ's brief discussion recites Dr. Bean's restrictions but departs from them with no explanation.  (Tr. 21-2).[1]

The Commissioner responds that Dr. Bean was not, in fact, a treating source, and that his opinion is supported by only one letter dated November 6, 2006, citing the MRI results and the plaintiff's subjective complaints, but providing no objective findings.  (Tr. 457).  The Sixth Circuit has held that the Commissioner's regulations mandate the "good reasons" requirement for treating sources only. Smith v. Commissioner of Social Security, 482 F.3d 873, 876 (6th Cir. 2007).

Although Dr. Bean was not mentioned by name in the decision, the ALJ did describe the author of the November 28, 2006 assessment as "the claimant's current treating physician." (Tr. 21).  Despite the fact that there is only one specific office note from Dr. Bean, it is fairly clear that the plaintiff saw him on more than one occasion.  The plaintiff's treating family physician, Dr. Jack W. Cope, indicated in

---

[1] The decision also recites the findings of a consultative examiner, Dr. Kip Beard, but follows the specific restrictions given by non-examining state agency reviewers C. Hernandez and Allen Dawson, completed in 2005.  (Tr. 20, 194-200).

08-365  Kathy Ann Shields

a September 11, 2007 office note that the plaintiff had an appointment with "the neurosurgeon . . . on the 18th." (Tr. 374).  A September 28, 2006 MRI of the lumbosacral spine, showing a disc protrusion and fragment of the disc impinging on the right L5-S1 nerve roots, was ordered by Dr. Bean.  (Tr. 369-70).  Dr. Cope stated on November 14, 2006 that Mrs. Shields was scheduled to have surgery on December 1.  (Tr. 458).  Older office notes from a previous treating physician indicate that the plaintiff had previously been referred to Dr. Bean.  (Tr. 427).  Since there is some evidence which could be interpreted as showing that Dr. Bean was a treating source, the ALJ's finding, undisturbed by the Appeals Council, that he <u>was</u> a treating source, will not be disturbed.

Dr. Bean was also a specialist and as such his opinion is normally entitled to greater weight in areas related to his medical specialty. 20 C.F.R. § 404.1527(d)(5).  There is no indication that the other physicians, Drs. Beard, Hernandez, and Dawson, were specialists in lumbar spine problems.  While the Commissioner suggests that Dr. Bean's opinion was not supported by sufficient objective evidence even if there was a treatment relationship, this is a rationale that should have been given by the ALJ in his decision in discussion Dr. Bean's opinion, rather than after the fact.  Nor was the failure to provide reasons harmless.  Given the plaintiff's complaints of back pain, Dr. Cope's description of it as "remarkable" and including radiation down both of her legs (Tr. 374) and the apparently serious

08-365  Kathy Ann Shields

MRI findings, the court cannot find that no reasonable fact finder could possibly credit Dr. Bean's opinion.

Moreover, there is an additional Wilson issue in that Dr. Cope made a brief statement on November 14, 2006 that the plaintiff was totally disabled due to a herniated lumbar disc and was scheduled to have back surgery.  (Tr. 456).  There is no question that Dr. Cope was a treating source (e.g., Tr. 157-60, 374-80, 458). While a conclusory opinion of disability is not entitled to controlling weight, the ALJ apparently did not even mention it in his decision and gave no reasons for rejecting it. Thus, it represents a Wilson violation.  Bowen v. Commissioner of Social Security, 478 F.3d 742, 747 (6th Cir. 2007).

The plaintiff also argues that the ALJ committed error in interpreting a statement by Consultative Psychological Examiner Jeanne Bennett that the plaintiff would have an "extreme" limitation in her ability to tolerate the stress and pressure of day-to-day employment as being equivalent to a "seriously limited but not precluded" limitation as given in the hypothetical question.  The VE had stated at the hearing that she would "interpret an extreme limitation to be no useful ability, and therefore, it would eliminate work."  (Tr. 540).  The VE also volunteered that if a person were seriously limited in their ability to tolerate work stresses they would in her opinion have to have an unlimited ability to interact with supervisors.  Since Dr. Bennett had said that the plaintiff's ability to interact appropriately with fellow

11

08-365 Kathy Ann Shields

workers and supervisors was slightly limited (Tr. 138), the VE concluded that "either way, we'd end up with no jobs" (Tr. 540). The ALJ remarked at the hearing that he felt the term "extreme" was ambiguous, and he interpreted it as meaning "severely limited, but not precluded." (Id.). State agency psychologists reviewed Dr. Bennett's report and concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 177, 201). They felt that Dr. Bennett's restriction was not supported by the evidence. (Tr. 189). In addition, the plaintiff underwent psychiatric treatment by Dr. Syed Raza in 2005 and 2006, and this source consistently assigned a Global Assessment of Functioning (GAF) score of 55. (Tr. 149, 435). A GAF score in this range reflects no more than "moderate" symptoms. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34. While the ALJ's reasoning could have been more explicit, there is sufficient evidence from which he could have concluded that Mrs. Shields' ability to tolerate stress was not more than "seriously limited but not precluded."

The decision will be remanded for further consideration.

This the 22nd day of September, 2009.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**